

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Joe Kunschik, Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. O-1841
Re: Is the Commissioner of Labor authorized to permit a wrestling match between a duly licensed wrestler and a "wrestling bear"?

Your request for an opinion on the following question has been received:

"This Department is in receipt of a request from a duly licensed wrestling promoter that he be permitted to include as a part of his show a match between a duly licensed wrestler and a 'wrestling bear.' The bear under consideration has been trained to wrestle and has performed in licensed wrestling shows in other states. The promoter states that this plan would be purely an exhibition and a novelty, which would be of interest to the spectators, and that it would probably increase attendance at the performance.

"Please advise whether this Department would be authorized to permit a wrestling match between a duly licensed wrestler and the 'wrestling bear,' under the Texas Boxing and Wrestling Law, especially under subdivision 'e' of section 11 of said law."

The question before us, stated simply and directly is whether or not an exhibition wrestling match between a duly licensed wrestler and a bear is legal in Texas.

At the outset we wish to point out that the jurisdiction and authority of the Commissioner of Labor

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Joe Kunschik, Commissioner, page 2

in respect to "regulating the promoting, conducting or maintaining of fistic combats, wresting matches, boxing or sparring contests or exhibitions for money remuneration, purse or prize equivalent to be received by the participants or contestants, or where an admission fee thereto or therefor is charged or received" is conferred by Article 614 of the Texas Penal Code. Under this law fistic combats, wrestling matches, boxing or sparring contests or exhibitions are legalized in this state.

Section 8 of Article 614 provides for the application for a license by "any person" before said person can act as a wrestler.

Finally, in Section 11, "matters prohibited" are enumerated. We find no inhibition against a wrestling match between a duly licensed wrestler, under the Act, and a bear. Subsection (e), of Section 11, which reads as follows, would not apply:

"Knowingly conduct or give or participate in or permit any sham or fake fistic combat match, boxing, sparring or wrestling contest or exhibition except it be as a burlesque."

After a careful consideration of all the terms, provisions and conditions of Article 614, i.e., the Texas Boxing & Wrestling Law, we have reached the conclusion that it was not the intention of the Legislature to include within the coverage of this law an exhibition matched between man and beast and furthermore it was not its intention to prohibit such an exhibition.

It is necessary to transcend and go beyond the confines of the Texas Boxing & Wrestling Law to determine the answer before us.

We do not profess to be an authority on the Genus Ursus, but we do feel that the courts will take judicial knowledge of the record of old Bruin in captivity and his susceptibility to training by man. It is not our intention to write a dissertation on the talents and human characteristics of bears, but we point out that they have always been popular subjects for training, partly because they are very friendly in captivity and comparatively easy

Hon. Joe Kunschik, Commissioner, page 3

to obtain and transport. During the last century itinerant showmen exhibited trained bears from village to village throughout Europe. Some peasants made a business of capturing cubs for which there was always a good market, and there arose even "academies of bears" where the bears were taught tricks. Trained bears have not always in this country been confined to circuses, zoos, and side shows. Today the trained bear is not an uncommon sight in both Europe and America. The brown bear (Ursus Arctus) is the commonest species in captivity and can be trained to "dance" to music and to "wrestle". See 3 Encyclopedia Britannica 256.

A careful review of the Texas statutes both criminal and civil, reveals no express or implied prohibition against an exhibition wrestling match between a man and a wrestling bear.

Such a match is of the nature of a zoological exhibition in our opinion, and if staged in connection with a program of wrestling matches should be assessed an occupation tax under Article 7047 (25) (a). This tax question is not directly before us, but it is determinative of the main question and we assert this opinion upon our own motion.

The sole legal barrier which remains to be considered in connection with a grappling contest between man and Bruin is whether or not the cruelty-to-animals laws of Texas would be contravened.

Article 180, Revised Civil Statutes, 1925, reads as follows:

> "As used in this subdivision, the word, 'animal' includes every living dumb creature; the words 'torture' and 'cruelty' include every act, omission or neglect whereby unnecessary or unjustifiable pain or suffering is caused, permitted or allowed to continue when there is a reasonable remedy or relief. The words 'owner' and 'person' include corporations, and the knowledge and acts of agents and employes of corporations in regard to animals transported, owned, used by or in custody of the corporation shall be held to be the knowledge and acts of such corporation."

Hon. Joe Kunschik, Commissioner, Page 4

Article 182, Revised Civil Statutes, 1925, provides:

"It shall be unlawful for any person to over-
drive, willfully overload, drive when overloaded,
overwork, torture, torment, deprive of necessary
sustenance, unnecessarily or cruelty beat, or
needlessly mutilate or kill any animal or carry
any animal in or upon any vehicle, or otherwise,
in a cruel or inhuman manner, or cause or pro-
cure the same to be done, or who having the charge
or custody of any animal unnecessarily fails to
provide it with proper food, drink or cruelly
abandons it."

Article 1374 of the Penal Code, 1925, fixes the
penalty for cruelty to animals, as follows:

"Whoever overdrives, wilfully overloads, drives
when overloaded, overworks, tortures, torments, de-
prives of necessary sustenance, unnecessarily or
cruelly beats, or needlessly mutilates or kills
any animal, or carries any animal in or upon any
vehicle, or otherwise, in a cruel or inhumane
manner, or causes or procures the same to be done,
or who having the charge or custody of any animal
unnecessarily fails to provide it with proper
food, drink, or cruelly abandons it, shall be
fined not exceeding two hundred dollars. As used
in this article the word 'animal' includes every
living dumb creature, and the words 'torture' and
'cruelly' includes every act, omission or neglect
whereby unnecessary or unjustifiable pain or suf-
fering is caused, permitted or allowed to contin-
ue when there is a reasonable remedy or relief."

Articles 4597 and 4598, Revised Civil Statutes,
1925, create and provide duties for a State Bureau of
Child and Animal Protection, in the following language:

"The Governor shall appoint a State Bureau
of Child and Animal Protection which shall not
have less than nine nor more than twenty-one
members from the members of the directorate of
the Texas State Humane Society. The Governor

Hon. Joe Kinschik, Commissioner, page 5

the Superintendent of Public Instruction and
the Attorney General shall be ex-officio mem-
bers of the Board of Directors of said State
Bureau.

"It shall be the duty of said bureau to se-
cure the enforcement of the laws for the pre-
vention of wrongs to children and dumb animals
as now or hereafter defined by law; to appoint
local and State agents to assist in this work;
to assist the organization of district and
county societies, and to give them representa-
tion in the State Bureau; to aid such societies
and agents in the enforcement of the laws for
the prevention of wrongs to children and dumb
animals as prescribed by law; and to promote
the growth of education and sentiment favorable
to the protection of children and dumb animals."

Bear-baiting was a sport very popular in England
for 700 years, but it was suppressed on account of cruel-
ty in 1835. Bear shows in Russia with Old Bruin in a
burlesque costume, with bells and spangles, in which he
danced and went through pantomime performance, were the
rage for centuries, but the training of the bears was
conducted with such cruelty that it caused vigorous com-
plaints and finally in 1867 the Russian Government pro-
hibited the bear shows. "Wild Animals In and Out of
the Zoo", W.M. Mann, Smithsonian Scientific Series,
Vol. 6, page 97.

The "cruelty to animals" laws of this state were
enacted to prevent any treatment of dumb animals which
characterized bear-baiting and the Russian bear shows.
The human race has progressed a long ways since the
days of Merry England and Czarist Russia in its attitude
toward dumb beasts, and the courts of this state would
not tolerate a cruel or inhuman treatment of animals
in any public exhibition. We wish to point out, however,
that it cannot be said that the participation of a train-
ed bear in a wrestling match with a man is prima facie
evidence of cruelty to the bear. The presumption of
cruelty points rather to the human participant, but homo
sapiens has been known to get into a case full of lions.
It is his constitutional right.

Hon. Joe Kunschik, Commissioner, page 6

It is our opinion that an exhibition wrestling match between a man, whether he is a duly licensed wrestler or not, and a bear is legal in Texas provided it does not violate Article 188 of the Revised Civil Statutes, 1925, and Article 1374 of the Penal Code, 1925, i.e., the cruelty-to-animals statutes, and that such a match is outside of the jurisdiction and authority conferred upon the Commissioner under Article 614 of the Penal Code, Vernon's Annotated Statutes, i.e., the Texas Boxing & Wrestling Law.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Dick Stout
            Assistant

DS:ob

APPROVED OCT 25, 1939

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN